La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Tenemos la oportunidad de interpretar la Regla 22 de Evidencia, 32 L.P.R.A. Ap. IV, sobre evidencia excluida por políticas extrínsecas y su aplicación en el campo de los se-guros, específicamente en las comunicaciones entre asegu-rador y asegurado. Veamos los hechos que originan este recursoj.(1)
HH
Para el período comprendido entre el 20 de noviembre de 2003 al 20 de noviembre de 2004, la recurrida Integrand Assurance Company (Integrand) expidió a favor de la parte peticionaria Carpets & Rugs Warehouses Inc. y Carpet Mart Inc. (Carpets & Rugs) una póliza tipo “Commercial Package” con número CP-7056076. Esta póliza cubría determinados riesgos, los cuales eran:
a) Daños a un edificio (“Building”) propiedad de la parte peticionaria localizado en la Urb. Santa Rosa, Bayamón con un límite de póliza de $4,600,000.
b) El inventario y demás propiedad mueble localizada en dicho edificio (“Contents”), con un límite de póliza de $1,500,000.
*622 c) Los daños resultantes de la interrupción del negocio, ex-cluyendo renta (“Business Income”), con un límite de póliza de $600,000.
d) La pérdida de renta (“Rent Income”) con un límite de póliza de $300,000.
Durante la madrugada del 18 de octubre d.e 2004 ocu-rrió un incendio en el edificio asegurado, el cual causó cuantiosos daños a la estructura, al inventario propiedad de la parte peticionaria, mobiliario y demás propiedad mueble que se encontraba dentro del edificio.
El 25 de octubre de 2004 la parte peticionaria oportuna-mente notificó a Integrand sobre el siniestro ocurrido. Como parte de su reclamación, entre el 19 y el 27 de enero de 2005, Carpets & Rugs sometió varias declaraciones ju-radas a Integrand, en las cuales estimaba los daños sufri-dos en $6,646,887.96.
Integrand, a su vez, comenzó la investigación correspon-diente con el propósito de determinar la existencia de cu-bierta e informar los estimados de daños que estaría dis-puesta a indemnizar, de ser éstos procedentes. Para esta labor, contrató al Ing. Arturo Baella para el estimado co-rrespondiente a los daños a la estructura del edificio y a la firma de contadores Quintana, López, Donoghue & Gonzá-lez para el estimado sobre las pérdidas de ingreso por in-terrupción de negocios y la pérdida de renta.
El 14 de abril de 2005 Integrand envió, a través del Sr. Angel A. Morales, supervisor de Reclamaciones de la ase-guradora, una comunicación mediante carta a Carpets & Rugs a través del Sr. Mike Johnson, ajustador público con-tratado por la parte peticionaria. En la misiva, le infor-maba los estimados de daños a los que había llegado y las cantidades que estaba dispuesta a pagar en ese momento, cubiertas por la póliza expedida. Los estimados fueron los siguientes:
1. De la cubierta por daños al edificio (“Building”) con tope de $4,600,000, Integrand ofreció el pago de $4,073,772.
*623 2. De la cubierta por interrupción de negocio (“Business Income”) con tope de $600,000, Integrand ofreció el pago de $272,486.58.
3. De la cubierta por la pérdida del contenido del edifi-cio (“Contents”) con tope de $1,500,000, Integrand ofreció el pago de $318,472.92.
4. De la cubierta por pérdida de ingresos por renta (“Loss of rent income”) con tope de $300,000, Integrand acordó el pago total, es decir $300,000.
En total, Integrand reconoció que los daños producidos por el incendio ascendían a la cantidad de $4,964,731.50. En la carta, Integrand ofrecía el pago inmediato del 50% del ajuste relativo al costo de reconstrucción del edificio, es decir la cantidad de $2,036,886. El restante 50% del ajuste relativo al costo de reconstrucción del edificio ofreció pa-garlo cuando la obra estuviese sustancialmente terminada. Además, ofreció el pago inmediato del total de los ajustes concernientes a las restantes cubiertas, para un total de $2,927,845.50.
Mediante carta de 19 de abril de 2005, Carpets & Rugs aceptó parcialmente el ajuste realizado por Integrand. Ex-presó que, según sus estimados, los daños sufridos exce-dían los límites de la póliza en cuanto a todas las cubier-tas,(2) por lo que Integrand debía responder hasta dichos límites. Aceptó entonces sólo el ajuste en cuanto a la cu-bierta de pérdida de ingresos por renta, la cual Integrand había consentido pagar hasta el límite de la póliza, y re-chazó los demás ajustes.
Carpets & Rugs reiteró su aceptación del ajuste ofrecido en cuanto a la cubierta referente a la pérdida de ingresos por renta en cartas enviadas durante el mes de mayo de 2005 sin recibir respuesta de Integrand. Ante la negativa de Integrand en cumplir con el pago del ajuste ofrecido en su misiva de 14 de abril de 2005, además de las controver-sias referentes a los ajustes en las demás cubiertas, Car *624 pets & Rugs presentó demanda ante el Tribunal de Pri-mera Instancia por incumplimiento de contrato y daños y perjuicios. Además, por considerar que la negativa de Integrand en pagar el límite de la póliza en la cubierta refe-rente a la pérdida por renta constituía una práctica desleal en el ajuste de reclamaciones, presentó una querella ante la Oficina del Comisionado de Seguros.(3)
Integrand contestó oportunamente la demanda presen-tando varias defensas afirmativas. Luego de varios trámi-tes procesales, Carpets & Rugs presentó moción de senten-cia sumaria parcial. En ésta, solicitó el pago del límite de la póliza en las cubiertas referentes a los daños sufridos por la estructura (“Building”) y a la pérdida por interrup-ción de negocios (“Business Income”).(4)
Como apoyo a su solicitud, Carpets & Rugs presentó la carta enviada por Integrand el 14 de abril de 2005 en la que ésta informó el ajuste de las distintas cubiertas. Ar-güyó que en cuanto a la cubierta de daños a la estructura del edificio, Integrand en esa carta se había comprometido al pago de $4,073,772, según el estimado preparado por el Ing. Arturo Baella. Carpets & Rugs también presentó una comunicación que el ingeniero Baella cursó a Integrand el 25 de agosto de 2006, en respuesta a un nuevo estimado de *625 reconstrucción del edificio en cuestión que la recurrida Integrand había solicitado. Debido al alza en los materiales de construcción y en la operación de equipo pesado, el nuevo estimado arrojaba un total de $4,747,748, un au-mento de 17% del costo original. Carpets & Rugs, basando su reclamo en dicha documentación, solicitó el límite de la póliza, es decir $4,600,000, al ser dicho límite menor que la nueva suma estimada por el ingeniero Baella.
En cuanto a la cubierta por la pérdida por interrupción de negocios ("Business Income”), Carpets & Rugs solicitó también el límite de la póliza en dicha cubierta, ascen-dente a $600,000. Como base de su alegación, utilizó el cálculo que la firma de contadores Quintana, López, Do-noghue & González había incluido en la carta de 14 de abril de 2005. Según dicho cálculo, la pérdida sufrida por interrupción de negocios de Carpets & Rugs entre el pe-ríodo del 18 de octubre de 2004, día del siniestro, hasta finales de abril de 2005 igualaba $90,828.86. En la comu-nicación aludida, la firma de contadores había proyectado dicha pérdida a un período de dieciocho meses, tiempo es-timado de reconstrucción del edificio, lo que equivalía a una cantidad de $272,486.58. Integrand se había compro-metido en la carta de 14 de abril de 2005 al pago de esa cantidad. En su moción, Carpets & Rugs extendió dicha proyección desde el 18 de octubre de 2004 hasta el 18 de octubre de 2006, lo que equivalía a veinticuatro meses, y le añadió los dieciocho meses que se estimaba se reconstru-yera el edificio, para un total de cuarenta y dos meses. Por lo tanto, eso constituía siete períodos de seis meses, por lo cual dicha partida ascendía a $635,802.02, superior al lí-mite de la póliza de $600,000.
Integrand se opuso a la solicitud de sentencia sumaria parcial, aduciendo varios argumentos. En primer lugar, in-dicó que Carpets & Rugs no había cumplido con su obliga-ción de notificar oportunamente el siniestro ocurrido, por lo que había controversia de hechos en cuanto al cumpli- *626 miento de Carpets & Rugs con sus obligaciones según la póliza.
Por otro lado, argüyó que la base de las alegaciones de Carpets & Rugs, la carta de 14 de abril de 2005, era inad-misible en evidencia en un juicio plenario y, por lo tanto, no era un documento adecuado que sirviera de base para dic-tar una sentencia sumaria. Indicó que dicha carta consti-tuía una oferta de transacción y que, al amparo de la Regla 22 de las de Evidencia, dicha oferta no era admisible por ser una comunicación en vías de completar un acuerdo transaccional.
Por último, alegó que había controversia en cuanto a la validez del contrato de seguro, ya que entendía que la parte peticionaria había incurrido en dolo contractual al realizar declaraciones falsas acerca de la propiedad asegurada.(5)
El Tribunal de Primera Instancia declaró “con lugar” la solicitud de sentencia sumaria parcial. Según la sala de instancia, Integrand no controvirtió ninguno de los hechos expuestos por Carpets & Rugs en apoyo a su solicitud de disposición sumaria. Entendió el foro primario que, luego de Integrand haber investigado, ajustado y pagado parte de la reclamación, no podía cuestionar su responsabilidad y obligación según la póliza alegando discrepancias en la descripción del edificio asegurado. Por lo tanto, tomó como ciertos los hechos que surgían de la comunicación del 14 de abril de 2005, ya que Integrand no los controvirtió en su oposición.
La sala de instancia, como cuestión de derecho, descartó el argumento de Integrand de que la carta de 14 de abril de 2005 se trataba de una oferta de transacción. Concluyó que dicha carta y las sumas que allí se establecían, constituían *627 la posición institucional de Integrand con respecto a la re-clamación que se le hizo, en cumplimiento del deber esta-tutario establecido por el Art. 27.162 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2716b. Por lo tanto, dicha carta constituía un reconocimiento de deuda a favor de Carpets & Rugs, al menos en cuanto a las sumas ofrecidas como ajuste.
En relación con los planteamientos de Integrand refe-rentes a dolo en el perfeccionamiento del contrato de se-guro y que no se le había notificado oportunamente de la pérdida, la sala de instancia aplicó las doctrinas de renun-cia (“waiver”) e impedimento (“estoppel”). Indicó que Integrand renunció a los términos y condiciones de la póliza luego de haber investigado y ajustado la reclamación, inclusive pagándola parcialmente.
Siendo así, el Tribunal de Primera Instancia ordenó el pago de los límites de la póliza en ambas cubiertas, a saber: $4,600,000 en la cubierta de daños a la estructura del edificio y $600,000 en la cubierta de pérdida por interrup-ción de negocio, para un total de $5,200,000.
Inconforme con ese dictamen, Integrand acudió en re-curso de apelación al foro intermedio. Argüyó, en esencia, que la sala de instancia había errado al concluir que la comunicación de 14 de abril de 2005 era un reconocimiento de deuda y no una oferta transaccional. Indicó, además, que no procedía dictar sentencia sumaria por existir aspec-tos complejos y subjetivos de intención y dolo en el perfec-cionamiento de la póliza.
El Tribunal de Apelaciones revocó al foro de instancia. Determinó que, en efecto, la carta enviada el 14 de abril de 2005 era una oferta de transacción, inadmisible en eviden-cia de acuerdo con la Regla 22 de Evidencia. Concluyó que tanto el lenguaje de la carta enviada, así como la jurispru-dencia de este Tribunal interpretando el Art. 27.162 del Código de Seguros de Puerto Rico, supra, demostraban que el ajuste requerido por ley se trata de una oferta de *628 transacción. Puesto que dicha carta era la base de la sen-tencia dictada, ésta no podía prevalecer por sustentarse en evidencia inadmisible en un juicio plenario. Expresó ade-más que existían “elementos subjetivos y de intención y propósitos mentales en los cuales el factor de credibilidad es importante”(6) por lo que no procedía dictar sentencia sumaria, sino celebrar un juicio plenario.
De dicha determinación recurre Carpets & Rugs ante este foro y aduce, en esencia, que erró el Tribunal de Ape-laciones al resolver que la carta de 14 de abril de 2005 constituía una oferta de transacción, inadmisible en evi-dencia por razón de la Regla 22 de Evidencia. Arguye, por lo tanto, que erró el foro intermedio al revocar la sentencia sumaria parcial dictada por el Tribunal de Primera Instancia.
El 24 de agosto de 2007 denegamos expedir el recurso presentado. El 2 de noviembre de 2007, en reconsideración, expedimos el certiorari solicitado. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.(7)
II
A. La Regla 22(b), según enmendada, lee como sigue:
(b) Transacciones — No es admisible en procesos criminales o civiles evidencia sobre transacciones u ofertas de transacción de delito o sobre manifestaciones hechas o conducta realizada en el curso de las negociaciones para ello, en relación a delitos menos grave que por ley pueden ser objeto de transacción.
(1) Pleitos civiles. — No será admisible para probar respon- *629 sabilidad, o para probar que la reclamación o parte de ésta carece de validez, evidencia de:
(A) Que una persona ha provisto, ofrecido o prometido pro-veer dinero o cualquier otra cosa de valor para transigir una reclamación;
(B) que una persona ha aceptado, ofrecido o prometido aceptar, dinero o cualquier otra cosa de valor para transigir una reclamación, o
(C) conducta realizada o manifestaciones efectuadas en el curso de la negociación de la transacción.
Esta regla no impide que este tipo de evidencia sea admisi-ble cuando es ofrecida para otro propósito, como para probar prejuicio o interés de un testigo o para negar una alegación de demora indebida. 32 L.P.R.A. Ap. IV.
Esta regla lleva como título “Evidencia pertinente afec-tada o excluida por políticas extrínsecas”. Como lo expresa su título, se excluye esta prueba no por razones ligadas a la búsqueda de la verdad, sino para promover unas acciones, conductas o comportamientos que, como cuestión de polí-tica pública, el Estado desea fomentar. Véase E.L. Chiesa Aponte, Tratado de Derecho Probatorio, Santo Domingo, Editora Corripio, 1998, T.1, Sec. 3.1, págs. 150-151.
El lenguaje de la regla enmendada es más amplio que el de la regla anterior, pero conserva el mismo espíritu de aquélla.(8) En pleitos civiles, la regla excluye: (1) prueba de que una parte ha realizado prestaciones u ofertas para prestarlas con el propósito de transigir una reclamación; (2) prueba de que una parte ha aceptado, u ofrecido o prometido aceptar prestaciones con el propósito de transigir una reclamación, y (3) conducta o manifestaciones realizadas durante el curso de la negociación de la transacción.
*630 El fundamento de la regla es evidente. Existe una fuerte política pública a favor de que se transijan los pleitos sin tener que ir a los tribunales y sin tener que llegar a juicio. Chiesa Aponte, op cit, See. 3.3, pág. 160. Las transacciones extrajudiciales son deseables desde cualquier perspectiva: ahorran tiempo y dinero a las partes involucradas en el litigio, descongestionan los calendarios judiciales y propenden al diálogo y a la paz entre los ciudadanos. Admitir evidencia de promesas u ofertas de transacción o de aceptación o promesas para aceptar éstas derrotaría esta sólida política pública, pues desalentaría que se produjeran las mismas.
Por otro lado, hemos expresado en ocasiones anteriores que más allá de fomentar el sosiego entre los ciudadanos, existe otro fundamento para excluir este tipo de evidencia y es que “ordinariamente no constituyen una aceptación de que tal reclamación es legítima, sino la creencia de que la continuación del pleito o proceso causa molestias y trastor-nos que es preferible evitar”. Pueblo v. Ruiz, 83 D.P.R. 349, 354 (1961). Es decir, no necesariamente las ofertas que puedan intercambiarse entre las partes durante las nego-ciaciones conducentes a una transacción reflejan la veraci-dad de sus responsabilidades y posiciones, pues en todo proceso de transacción existen sacrificios mutuos de los ac-tores para llegar a la resolución de sus diferencias de modo que se evite o finalice un pleito. Y esto tiene que ser así, debido a la naturaleza del contrato de transacción.
Recientemente, al analizar el contrato de transacción, indicamos que es consensual, recíproco y oneroso. US Fire Insurance v. A.E.E., 174 D.P.R. 846 (2008). También hemos establecido como requisitos para su validez el que exista una controversia entre las partes, que las partes posean la intención de sustituir la incertidumbre jurídica en la que se encuentran con la transacción y, por último, que existan mutuas concesiones entre las partes. Id.
*631 Siendo así, las comunicaciones u ofertas a las que se refiere la Regla 22 de Evidencia, tienen necesariamente que referirse a aquellas que se realicen en el marco de un proceso de negociación conducente al contrato de transacción. Por lo tanto, para que sean inadmisibles en evidencia, tiene que haber una controversia entre las par-tes al momento en que se realiza la oferta o comunicación con miras al contrato de transacción. J.B. Weinstein y M.A. Berger, Weinstein’s Federal Evidence, (Joseph M. McLaughlin, ed.), 2da ed., Nueva Jersey, Ed. Matthew Bender, 2008, Vol. 2, Sec. 408.06, págs. 408-422; C.B. Mueller, L.C. Kirpatrick, Evidence, 3ra ed., Nueva York, Aspen Publishers, 2003, Sec. 4.25, pág. 243; D.P. Leonard, The New Wig-more: A Treatise on Evidence, Selected Rules of Limited Admissibility, Nueva York, Ed. Aspen Law & Business, 2002, Sec. 3.7.2, pág. 357. Igualmente, la comunicación u oferta debe hacerse dentro de un proceso en el cual la in-tención de las partes sea sustituir la incertidumbre jurí-dica de sus respectivas posiciones con la transacción. Véase Weinstein y Berger, op. cit., Sec. 408.03, pág. 408-411 (‘What is controlling is the intention of the offeror as manifested by the form of the statement”).
Cuando la parte que solicite la exclusión de la evidencia alegue que ésta se trata de una oferta de transacción, dicha oferta debe contener las concesiones que al me-nos esa parte está dispuesta a reconocer en pos de la liquidación de la controversia. Debe tratarse de una verdadera oferta y no de meras posiciones o comunicaciones de negocio entre las partes. Mueller & Kirpatrick, op. cit. Véase, también, Leonard, op. cit., Sec. 3.7.2, pág. 345.
Al ser consensual el contrato de transacción, el cual surge de la libertad de contratación de las partes, de igual modo la comunicación u oferta excluible al amparo de la Regla 22 de Evidencia tiene necesariamente que referirse a una comunicación u oferta que nazca de la voluntad de una de las partes implicadas en la controversia. Por *632 lo tanto, no puede referirse a comunicaciones u ofertas que una de las partes realice en cumplimiento de un mandato de ley o por una obligación anterior. No cumple el propósito de fomentar las transacciones entre las partes litigantes la exclusión de comunicaciones u ofertas que se produjeron, no con la intención de finiquitar una controversia sin llegar a los tribunales, sino por razón de que la ley así lo exige o una obligación preexistente lo ordena.
B. Por otro lado, debido a que la industria de los seguros está revestida del más alto interés público, es regulada extensamente por el Estado. Maryland Cas’y Co. v. San Juan Rac’g Assoc., Inc., 83 D.P.R. 559, 563 (1961). El Código de Seguros de Puerto Rico es la ley especial a través de la cual la Asamblea Legislativa reglamenta las prácticas y requisitos de esta industria. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 442 (1997).
Uno de los renglones mayormente regulado por el Código de Seguros de Puerto Rico es el perteneciente a las prácticas desleales y fraudes en el negocio de los seguros. Véanse: Arts. 27.010-27.360 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 2701-2740; Comisionado de Seguros v. PRIA, 168 D.P.R. 659 (2006). Como parte de las prácticas desleales detalladas allí, se encuentran aquellas relacionadas al ajuste de reclamaciones. Véase Art. 27.161 del Código de Seguros de Puerto Rico, supra. En dicha sección también se establecen los términos que van a tener los aseguradores para la resolución de reclamaciones. Así, el Art. 27.162, supra, establece en lo pertinente:
(1) La investigación, ajuste y resolución de cualquier reclama-ción se hará en el período razonablemente más corto dentro de los primeros cuarenta y cinco (45) días después de haberse sometido al asegurador todos los documentos que fueren nece-sarios para disponer de dicha reclamación. Sólo cuando me-dien causas extraordinarias se podrá extender ese primer pe-ríodo, pero tal extensión nunca podrá exceder el término de noventa (90) días desde la fecha en que se sometió la recia- *633 mación. En aquellos casos en que el asegurador necesite un término adicional a los noventa (90) días, deberá así solici-tarse por escrito al Comisionado veinte (20) días antes del ven-cimiento de dichos noventa (90) días, debiendo también notifi-carse de ello al reclamante. Si el Comisionado entendiera que la solicitud de tiempo adicional es irrazonable, sea porque la misma no está debidamente justificada o el tiempo adicional es excesivo, le notificará al asegurador que no procede dicha prórroga y que, por tanto, deberá disponer de la reclamación en el término reglamentario o dentro del término adicional que en dicha notificación se le concediera.
El artículo establece una obligación a los aseguradores de investigar, ajustar y resolver cualquier reclamación que se le presente en el término más corto posible dentro de los primeros cuarenta y cinco días luego de haberse sometido al asegurador todos los documentos necesarios para la dis-posición de la reclamación. La Asamblea Legislativa dis-puso que la resolución de la reclamación debe realizarse en el término máximo de noventa días luego de haber sido sometida.
La disposición antes citada ha sido objeto de examen por parte de este Tribunal en varias ocasiones. Así, en Com. Seguros P.R. v. Gen. Accident Ins. Co., 132 D.P.R. 543 (1993), resolvimos que el término máximo de resolución de una reclamación de 90 días dispuesto por ley, se contará a partir de que se le someta la reclamación al asegurador. En aquella ocasión, indicamos que el lenguaje del estatuto for-zaba dicho resultado y acoger otra interpretación “no sólo derrotaría el claro mandato legislativo, sino que haría ino-perante la solución que quiso dársele al problema de las demoras e inacción de las compañías aseguradoras” en la resolución ágil de las reclamaciones. Íd., pág. 552.
Por otro lado, en Com. Seg. P.R. v. Antilles Ins. Co., 145 D.P.R. 226 (1998), examinamos el alcance de la frase “investigación, ajuste y resolución”. Resolvimos que “una reclamación se entiende como resuelta una vez la empresa aseguradora notifica a su asegurado el ajuste final *634 de la reclamación que le fue presentada”. (Énfasis nuestro.) íd., pág. 232. Aclaramos que el asegurador cum-plirá con su obligación al amparo de la ley al notificar una oferta razonable, determinación que en caso de controver-sia entre las partes dilucidará el Comisionado de Seguros. íd.
Surge claramente de nuestros pronunciamientos anteriores que la obligación impuesta por el mencionado artículo es la de investigar, ajustar y resolver una reclamación de forma final en los noventa días luego de presentada. Durante ese período, es obligación del asegurador realizar una investigación diligente que incluya, entre otros: (1) determinar si el evento danmificador ocurrió durante la vigencia de la póliza; (2) determinar si el asegurado reclamante tenía un interés asegurable; (3) determinar si la propiedad damnificada es aquella descrita en las declaraciones; (4) confirmar si las pérdidas reclamadas no están sujetas a exclusiones de riesgo, y (5) investigar si el daño fue causado por negligencia de un tercero, de modo tal que el asegurador pueda subrogarse en los derechos de resarcimiento de su asegurado. Véase R. Cruz, Derecho de Seguros, San Juan, Pubs. JTS, 1999, Sec. 20.3, págs. 237-238. Luego de analizar estos aspectos, y todos aquellos necesarios para brindar un ajuste equitativo y razonable, es que el asegurador se encuentra en posición de cumplir con su obligación de resolver una reclamación de forma final.
Una reclamación puede ser resuelta de forma final de tres maneras distintas: (1) el pago total de la reclamación; (2) la denegación escrita y fundamentada de la reclamación, o (3) la notificación de una oferta razonable. Véase Carta Normativa Núm. N-I-4-52-2004 emitida por la Comisionada de Seguros el 26 de abril de 2004. Como ejercicio de derecho comparado, véase L. Russ y T. Segalla, Couch on Insurance, 3ra ed., Ed. Thomson-West, 2005, Vol. 14, See. 198:31.
*635 Cuando el asegurador escoge cumplir con su obligación mediante el envío de una oferta razonable al asegurado, dicha oferta constituye el estimado del asegurador de los daños sufridos por su asegurado. Al emitir dicho documento, el asegurador está informando que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones, y un estudio realizado por el ajustador de reclamaciones del asegurador, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación. Después de todo, al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe. Véase Art. 27.161(6) del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2716a.
Siendo este documento emitido por el asegurador el pro-ducto de una investigación adecuada y un análisis dete-nido, éste constituye la postura institucional del asegura-dor frente a la reclamación de su asegurado. En dicho documento no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegu-rador en cuanto a la procedencia de la reclamación y la existencia de cubierta según la póliza.
Es por esto que a un asegurador no se le permite retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente. Si se permite que un asegurador se retracte de la comunicación que le obliga a emitir el Código de Seguros de Puerto Rico, se circunvalaría el término máximo en el cual un asegurador está obligado a investigar y resolver una reclamación, pues significaría que la resolución no sería final. Dicha práctica causaría incertidumbre en los asegurados, pues el asegurador podría cumplir artificiosamente con el término que le impone el Código de Seguros de Puerto Rico para *636 evitar sanciones por parte del Comisionado y luego desde-cirse de los daños estimados originalmente, obligando al litigio de partidas que encontró procedentes inicialmente.
La investigación, ajuste y resolución de reclamaciones por parte del asegurador no es un ejercicio fútil ni pro forma que los aseguradores deben cumplir para no recibir multas por parte del Comisionado de Seguros, sino que es el documento de trabajo a través del cual el asegurador le responde formalmente a su asegurado si su reclamación procede o no, y de proceder, a cuánto asciende dicho ajuste. Dicha comunicación, según estatuido claramente en el Código de Seguros de Puerto Rico e interpretado anteriormente por este Tribunal, debe ser emitida en el término máximo de noventa días desde que se presenta la reclamación.
Esto no quiere decir que, con ese documento como base de negociación, asegurador y asegurado puedan considerar llegar a un contrato de transacción de la reclamación. Las posibilidades de transacción entre asegurador y asegurado sólo estarán limitadas por lo que en su día el asegurador informó como procedente en su comunicación o postura inicial. Por lo tanto, el asegurado podría renunciar a ciertas partidas a cambio de que el asegurador acepte otras que inicialmente estimó improcedentes o se modifiquen sumas de las ofrecidas originalmente. Lo que de forma alguna es permisible es que un asegurador, ante un reclamo judicial de su asegurado, deniegue partidas que en su ajuste inicial entendió procedentes, en ausencia de fraude u otras circunstancias extraordinarias que lo ameriten.
C. De otro lado, es conveniente recordar que este Tribunal ha establecido reiteradamente la especial aplicación de las doctrinas de renuncia (“waiver”) e impedimento (“estoppel”) a los casos relacionados con el campo *637 de los seguros, por la naturaleza de adhesión de estos contratos. López v. Atlantic Southern Ins. Co., 158 D.P.R. 562, 570 (2003).
Como hemos establecido anteriormente, la doctrina de renuncia ha sido definida como el abandono intencional o cesión voluntaria de un derecho o privilegio conocido. López v. Atlantic Southern Ins. Co., supra. Véase, además, Rodríguez de Oiler v. T.O.L.I.C., 171 D.P.R. 293 (2007).
Asimismo, la doctrina de impedimento se ha definido como la abolición de derechos y privilegios de la asegura-dora cuando fuera contraria a la equidad su afirmación. Rodríguez de Oller v. T.O.L.I.C., supra; López v. Atlantic Southern Ins. Co., supra, pág. 570.
Igualmente, hemos resuelto que estas doctrinas aplican a prácticamente cualquier situación en que una asegura-dora niega cubierta de una póliza, especialmente para de-mostrar que las aseguradoras han renunciado a términos y condiciones estipuladas por ellas en los contratos de seguro. Rodríguez de Oller v. T.O.L.I.C., supra; López v. Atlantic Southern Ins. Co., supra, pág. 571.
D. Es abundante la jurisprudencia de este Tribunal en cuanto a la naturaleza, el estándar aplicable y la proceden-cia de urna moción de sentencia sumaria, por lo que nos abstendremos de reiterar lo ya expuesto anteriormente. Véase, é.g., E.L.A. v. Cole, 164 D.P.R. 608 (2005). Sólo men-cionaremos, brevemente, dos aspectos de esta moción que aplican especialmente al caso de autos.
Puesto que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario. Jusino et als. v. Walgreens, 155 D.P.R. 560, 577 (2001). Igualmente, se requiere que la parte contraria no se cruce de brazos al presentársele una moción de sentencia sumaria. Audiovisual Lang. v. Sist. *638 Est. Natal Hnos., 144 D.P.R. 563, 576 (1997). Es decir, es necesario presentar documentos que controviertan los he-chos presentados por la parte promotora. Id.
Por otro lado, en innumerables ocasiones hemos expresado que no procede una sentencia sumaria cuando existen elementos subjetivos de intención, negligencia, propósitos mentales o cuando el factor de la credibilidad es esencial. Piñero v. A.A.A., 146 D.P.R. 890, 904 (1998); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 301-302 (1994). Los tribunales, al examinar una moción de sentencia sumaria y declararla no procedente por alegadamente contener elementos subjetivos o de credibilidad, deben asegurarse que estos elementos sean un ingrediente esencial en la resolución de la controversia ante su consideración. La sentencia sumaria es un mecanismo eficiente para descongestionar los calendarios judiciales y se perdería la utilidad de ésta si fuera derrotada con simplemente alegar la existencia de elementos subjetivos o de intención en la controversia, sin que éstos realmente existan o sean incidentales a la resolución del asunto.
III
Los primeros tres errores delineados por la peticionaria Carpets & Rugs pueden ser sintetizados en una sola con-troversia: la naturaleza y admisibilidad en evidencia de la carta de 14 de abril de 2005 cursada por la recurrida Integrand a la peticionaria Carpets & Rugs.
Como mencionamos anteriormente, para que una oferta o comunicación sea inadmisible en evidencia por virtud de la Regla 22 de Evidencia, supra, es necesario que ésta se haya producido en un proceso de negociación conducente al contrato de transacción. En este caso no nos encontramos ante una comunicación de este tipo, pues no existían nego-ciaciones pendientes al momento de emitirse la mencio-nada comunicación.
*639 En primer lugar, todavía no existía una controversia en-tre las partes referente al ajuste de las reclamaciones en cuestión. La controversia, si alguna, surgió con el envío de la carta a Carpets & Rugs, ya que éstos reclamaban el límite de la póliza en varias cubiertas, a lo que Integrand se negó. Anterior a dicha carta, no había una controversia bona fide entre las partes, sino una reclamación de un ase-gurado a su aseguradora como parte de un contrato de seguros.
Por otro lado, no nos convence el argumento de que dicha carta sea una oferta de transacción, pues dicha comu-nicación la realizó Integrand, no voluntariamente en un proceso de negociación conducente al contrato de transac-ción, sino como parte de su obligación al amparo del Código de Seguros de Puerto Rico de resolver de forma final una reclamación de un asegurado en el término máximo de no-venta días. No podemos atribuirle una intención de con-cluir un pleito a dicha misiva, pues la carta no fue una comunicación voluntaria de Integrand sino que estaba obli-gada a remitir dicho ajuste. Como explicamos anterior-mente, en nada aporta al propósito de la Regla 22 de Evi-dencia, supra, la exclusión de evidencia que fue producida por mandato de ley o por razón de una obligación preexis-tente y no voluntariamente con el objetivo de impedir un litigio o poner fin al ya iniciado.
Por las razones antes expuestas, concluimos que la carta de 14 de abril de 2005 enviada por Integrand a Carpets & Rugs no es inadmisible por razón de la Regla 22 de Evidencia, supra, pues no constituye una oferta de tran-sacción excluible bajo dicha regla.
Pasemos a revisar la solicitud de sentencia sumaria parcial presentada por la parte peticionaria Carpets & Rugs de acuerdo con los pronunciamientos expuestos.
1. Cubierta de daños al edificio o “Building”
Según reseñado anteriormente, Carpets & Rugs solicitó *640 el límite de la póliza en la cubierta de daños al edificio (Building). En apoyo de su solicitud, presentó la carta del 14 de abril de 2005 en la que Integrand había informado que el estimado de reconstrucción del edificio era de $4,072,772. Además, presentó una carta de 25 de agosto de 2006 del Ing. Arturo Baella, en la cual éste realizaba un nuevo estimado de reconstrucción del edificio, a un costo de $4,747,748 debido al alza en los materiales y equipo de construcción.
En su oposición, Integrand no controvirtió estos hechos. Como discutimos anteriormente, atacó la admisibilidad de la carta de 14 de abril de 2005 por alegadamente ser una oferta de transacción, argumento que hemos determinado como improcedente. En cuanto a la carta remitida por el ingeniero Baella realizando un nuevo estimado de daños, Integrand falla en atenderla y controvertirla.
En su oposición a la sentencia sumaria, en lugar de con-trovertir los hechos presentados, Integrand optó por pre-sentar varios argumentos que se pueden resumir en dos puntos esenciales: (1) la invalidez del contrato de seguro por existir dolo por parte de la peticionaria Carpets & Rugs en la descripción de la propiedad asegurada y (2) el incum-plimiento de Carpets & Rugs con las condiciones de la póliza. Ambos alegatos, aún de ser ciertos, no derrotan la solicitud de sentencia sumaria parcial de la peticionaria. Veamos.
Integrand aduce que la peticionaria Carpets & Rugs realizó falsas representaciones al describir el edificio ase-gurado, pues lo describió como un edificio de una planta hecho en concreto, y la realidad es que era de dos plantas y de construcción mixta de concreto y acero galvanizado. Por esta razón entiende que hubo dolo en el perfeccionamiento del contrato, por lo que no procede la disposición sumaria del asunto, pues el dolo es un elemento de intención y credibilidad. No tiene razón.
La carta de 14 de abril de 2005 constituyó el cumpli- *641 miento por parte de Integrand de la obligación que le im-pone el Código de Seguros de Puerto Rico de resolver cual-quier reclamación en un período máximo de noventa días. Dentro de ese período, Integrand tenía la obligación de in-vestigar adecuadamente el siniestro, incluyendo determi-nar si la propiedad damnificada era aquella descrita en las declaraciones de la póliza. El resultado de su investigación y ajuste debió haberse reflejado en la carta de 14 de abril de 2005. En dicha comunicación, no obstante, Integrand indicó estar cumpliendo con sus obligaciones contractua-les, e informó su conformidad con el pago de determinados ajustes en las distintas cubiertas incluidas en la póliza. En ese momento no informó sobre la alegada disparidad entre la propiedad damnificada y la asegurada.
De hecho, de la contestación a la demanda de la recurrida tampoco surgen alegaciones sobre fraude o falsas representaciones en las declaraciones de la póliza por parte de Carpets & Rugs. Sabido es que las aseveraciones sobre fraude o error se consideran materias especiales, las cuales deben exponerse detalladamente en las alegaciones, lo que en este caso no ocurrió. Véase Regla 7.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No es hasta la oposición a la moción de sentencia sumaria que por primera vez Integrand alega dolo en el perfeccionamiento del contrato de seguro.
Como expresamos anteriormente, a un asegurador no se le permite retractarse del ajuste realizado en la resolución de una reclamación de un asegurado, salvo fraude por parte del reclamante u otras circunstancias extraordina-rias que al asegurador le era imposible descubrir a pesar de una investigación diligente. No creemos que le fuera posible a Integrand determinar si la propiedad damnifi-cada era la misma que la asegurada descrita en las decla-raciones de la póliza, luego de una investigación diligente. En virtud de la doctrina de impedimento, Integrand ahora *642 se encuentra incapacitada de reclamar lo que en su día pudo investigar y plasmar en el ajuste que le comunicó a la peticionaria Carpets & Rugs y no hizo.
Por otro lado, Integrand indica que existen varias con-diciones en la póliza que impiden o limitan el pago de la reclamación. Por ejemplo, arguye que Carpets & Rugs in-cumplió su obligación de presentar la reclamación oportu-namente conforme a lo establecido en la póliza, lo que es una condición precedente a la tramitación de ésta y cuyo incumplimiento la colocó en un estado de indefensión. También arguye que aun cuando deba responder por la reconstrucción del edificio damnificado, sólo responderá al terminarse la reparación o reconstrucción del edificio en su totalidad, por la aplicación de la cláusula de “Replacement Cost” incluida en la póliza expedida.(9)
Somos del criterio que Integrand renunció a estas con-diciones de la póliza, por lo que está impedida de esgrimir-las para evitar el pago de la reclamación. Aun cuando no se hubiera cumplido con la obligación de presentar la recla-mación según establecido en la póliza, algún tipo de notifi-cación adecuada tuvo Integrand sobre la pérdida, pues existen en el expediente comunicaciones de sus ajustado-res referentes a la pérdida en los meses de noviembre y diciembre de 2004, además de que el informe de su perito ingeniero data del 17 de diciembre de 2004. Por otro lado, *643 como mencionamos anteriormente, si era esa una condi-ción necesaria para el pago de la reclamación, así lo debió expresar en la carta de 14 de abril de 2005, lo que no ocurrió. Como cuestión de derecho comparado, son nume-rosos los casos en las jurisdicciones estadounidenses que niegan esta defensa, luego de que el asegurador ha admi-tido que la póliza expedida cubre el riesgo reclamado. Véase Couch on Insurance, op. cit., Secs. 194:46-48, 194:58-60 y casos allí citados.
Igual solución merece la condición sobre la cláusula de “Replacement Cost”. Cierto es que dicha cláusula fue in-cluida en el acápite de “Optional Coverage” en las declara-ciones, por lo que pasó a formar parte de las condiciones de la póliza. Opinamos, sin embargo, que el pago ofrecido me-diante la carta de 14 de abril de 2005 debió ser sujeto a dicha condición. No fue así. En dicha carta, Integrand ofrece el pago inmediato del 50% del ajuste al que entendía tenía derecho Carpets & Rugs y el restante 50% se desem-bolsaría al completarse sustancialmente la obra (“Substantial Completion”). No menciona dicho ajuste la cláusula de “Replacement Cost” por lo que entendemos que Integrand renunció a ésta al no condicionar el pago del ajuste ofrecido a la reconstrucción total del edificio. Con el ajuste enviado, Integrand modificó la condición expuesta en la póliza, por lo que en este momento está impedida de actuar contra sus propios actos.
Como defensa adicional, Integrand arguye que al am-paro del Art. 11.370 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1137, no se renuncian a condiciones o de-fensas incluidas en la póliza por entrar en negociaciones para la liquidación de una reclamación.(10) Por lo tanto, *644 concluye que el hecho de haber emitido la carta de 14 de abril de 2005 no puede ser razón para entenderse renun-ciadas sus defensas según la póliza. No tiene razón. El Art. 11.370, supra, se refiere a renuncias a defensas o condicio-nes que se realizan durante un proceso de negociación con-ducente a la transacción o liquidación de una reclamación. Concluimos anteriormente que al momento de Integrand realizar la mencionada carta no se encontraba en un pro-ceso de negociación conducente a una transacción, pues no existía aún una controversia entre las partes. Por lo tanto, el mencionado artículo es inaplicable a la presente controversia.(11)
En suma, somos del criterio que no existe razón que impida la disposición sumaria de la reclamación del límite de la póliza en la cubierta por daños al edificio. En primer lugar, Integrand no logró controvertir los hechos presenta-dos por Carpets & Rugs. Todas las defensas presentadas por Integrand referentes a las condiciones de la póliza en cuanto a esta cubierta fueron renunciadas al emitir la carta de ajuste de 14 de abril de 2005. -No existiendo con-troversias de hecho en cuanto a esta reclamación y por no existir elementos subjetivos o de intención que impidan que se utilice el mecanismo extraordinario de la sentencia sumaria, ésta procede a favor de Carpets & Rugs por el límite de la póliza en dicha cubierta, es decir por $4,600,000. El pago debe realizarse en su totalidad de in-mediato, de haber sido completada la reconstrucción del *645 edificio durante el trámite del litigio, y de no ser así, con la condición expuesta por la recurrida en su carta de ajuste de 14 de abril de 2005.(12) Deben tenerse también en cuenta los intereses del interventor, Banco Popular de Puerto Rico, al emitirse el pago correspondiente. Véase Eagle Star v. La Esperanza Sugar Corp., 145 D.P.R. 290 (1998).
2. Pérdida por ingreso (“business income”)
En apoyo de la solicitud de sentencia sumaria en re-clamo del límite de la póliza en la cubierta por pérdida de ingresos, Carpets & Rugs presentó igualmente la carta de ajuste de 14 de abril de 2005. En ella se mostraba un cál-culo realizado por la firma de contadores Quintana, López, Donoghue & González, en la cual estimaban la pérdida por ingreso no proveniente de renta de la peticionaria en $90,828.86 para un período de seis meses.(13) Integrand, en su carta de 14 de abril de 2005, ofreció el pago de tres períodos de seis meses, lo que equivalía a $272,486.58, pre-viendo que la reconstrucción del edificio tardaría aproxi-madamente dieciocho meses.
En su solicitud de sentencia sumaria, la peticionaria proyectó dicho cálculo de la siguiente manera: contó desde el día de la pérdida, 18 de octubre de 2004, hasta el 18 de octubre de 2006, fecha aproximada en que presentó la so-licitud de sentencia sumaria. A eso, le añadió los dieciocho meses que proyectó Integrand para la reconstrucción del edificio. Eso igualó siete períodos de seis meses, o lo que es igual a cuarenta y dos meses. Ese período de tiempo, mul-tiplicado por los $90,828.86 que era la pérdida calculada en un período de seis meses, equivalía a $635,802.02, una cantidad en exceso del límite de la póliza de $600,000.
En cuanto a esta póliza, Integrand tampoco controvirtió los hechos pertinentes y presentó los mismos argumentos *646 que para con la cubierta sobre daños al edificio. Por lo tanto, le aplica la misma discusión que en cuanto a aquella cubierta expresamos. Aún así, somos del criterio que, como cuestión de derecho, no procede la disposición sumaria de esta controversia.
Si bien es cierto que no se controvirtió el ajuste presen-tado por Integrand en la carta de 14 de abril de 2005, en-tendemos que es necesaria la presentación de prueba adi-cional que apoye la solicitud de Carpets & Rugs en cuanto al monto de indemnización bajo esta cubierta. En primer lugar, el cálculo estimado por los contadores contratados por Integrand se refería a un período específico el cual era cercano a la fecha en que se ofreció dicho ajuste. Debe pre-sentarse prueba en un juicio que determine la validez de dicho cálculo al presente. Además, es cuestión de prueba igualmente las providencias, o ausencia de éstas, que rea-lizó la peticionaria para mitigar la merma en ingresos que le causó la pérdida. Estos aspectos, y otros tantos que pu-dieran ser pertinentes a la procedencia del límite de la póliza en dicha cubierta, deben ser objeto de prueba y exa-men en un juicio plenario. Claro está, Integrand entendió que existía cubierta según la póliza con el ajuste ofrecido en la carta de 14 de abril de 2005, lo cual circunscribe la prueba a ser presentada a la cuantía de la reclamación, pues la procedencia de ésta quedó aceptada.
IV
Por los fundamentos antes expresados, se revoca la sen-tencia emitida por el Tribunal de Apelaciones en este caso. Se ordena el pago del límite de la póliza en la cubierta por daños al edificio ascendente a $4,600,000 con las condicio-nes expuestas en la opinión. Se devuelve el caso para la dilucidación del monto por indemnizarse en la cubierta por pérdida de ingresos y cualesquiera otros asuntos pendientes ante el foro de instancia.

*647
Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez concurrió con el resultado sin opinión escrita.

 Los hechos que habremos de reseñar surgen de la prueba documental pre-sentada por las partes en apoyo a la moción de sentencia sumaria parcial y a su respectiva oposición. Por tratarse de la revisión de una moción de sentencia sumaria, nos encontramos en igual posición que el foro de instancia en Relación con la deter-minación de los hechos que no están en controversia. Albino v. Ángel Martínez, Inc., 171 D.P.R. 457, 487 (2007), citando a Díaz García v. Aponte Aponte, 125 D.P.R. 1, 13 (1989). Véase, además, Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 166 esc. 1 (1989).

 Excepto la cubierta de contenido del edificio (“Contents”).

 Cabe destacar que la Oficina del Comisionado de Seguros (O.C.S.) ordenó el pago del límite de la póliza en dicha cubierta el 28 de marzo de 2006. Asimismo, le impuso a Integrand una multa de $20,000 dólares por entender que había incurrido en prácticas desleales en el ajuste de reclamaciones al infringir los Arts. 27.161(6) y (12) y 27.162(1) del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 2716a y 2716b, además de la Carta Normativa N-I-4-52-2004 de la Oficina de Seguro, emi-tida el 26 de abril de 2004. La recurrida Integrand impugnó la imposición de dicha multa, ya que entendía que la O.C.S. estaba obligada a celebrar una vista adminis-trativa, por lo cual estaba impedida de resolver la querella sumariamente como lo había hecho. Este Tribunal confirmó la decisión de la O.C.S. al resolver que la cele-bración de una vista administrativa por infracciones a los artículos antes menciona-dos, queda bajo la discreción del Comisionado de Seguros por no haber obligación expresa en ley de celebrarlas y, en este caso, el Comisionado no había abusado de su discreción. Véase Comisionado Seguros P.R. v. Integrand, 173 D.P.R. 901 (2008).

 No incluyó en su solicitud el pago de la cubierta sobre pérdida del contenido del edificio (“Contents”). En cuanto a la cubierta por pérdida por renta (“Rent Income”) ya el Comisionado de Seguros había ordenado el pago de ésta, acto que realizó Integrand el 15 de junio de 2006.

 En específico, alegó que se le había representado que la estructura era de una sola planta, cuando en realidad era de dos y hasta tres pisos en algunas áreas y que se le había indicado en las declaraciones de la póliza que la propiedad estaba construida en concreto, cuando lo cierto era que era una construcción mixta entre concreto y acero galvanizado.

 Sentencia del Tribunal de Apelaciones, pág. 28. Cabe destacar que el foro intermedio no discute cuáles son los factores de la controversia que a su juicio de-penden de la credibilidad o elementos subjetivos de testigos.

 Es meritorio mencionar que compareció, en apoyo al alegato de la peticiona-ria, el interventor Banco Popular de Puerto Rico, el cual tiene una hipoteca a su favor sobre la propiedad damnificada y aparece en la póliza expedida como acreedor hipotecario.

 El texto de la regla anterior es el siguiente:
“(B) Transacciones. Evidencia de que una persona ha provisto, ofrecido o prome-tido proveer, o de que una persona ha aceptado u ofrecido o prometido aceptar, dinero o cualquier otra cosa para transar una reclamación no es admisible para probar responsabilidad ni para probar que la reclamación o parte de ésta no es válida. Tampoco es admisible evidencia de conducta o manifestaciones hechas en el curso de la negociación de la transacción. Esta regla no impide que ese tipo de evidencia sea admisible cuando se ofrece para otros propósitos.” 32 L.P.R.A. Ap. IV, R. 22.

 En su parte pertinente, dicha cláusula lee como sigue:
“d. We will not pay on a replacement cost basis for any loss or damage:
1. Until the lost or damaged property is actually repaired or replaced; and
2. Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.
e. We will not pay more for loss or damage on a replacement cost basis than the least of:
1. The Limit of Insurance applicable to the lost or damaged property;
2. The cost to replace, on the same premises, the lost or damaged property with other property:
a. Of comparable material and quality; and
b. Used for the same purpose; or
3. The amount you actually spend that is necessary to repair or replace the lost or damaged property.” Apéndice, pág. 37.

 El Art. 11.370 del Código de Seguros de Puerto Rico establece:
“Sin que sea una limitación de ningún derecho o defensa que de otro modo pueda tener un asegurador, ninguno de los siguientes actos por un asegurador o a nombre del mismo se considerará que constituye una renuncia de cualquier disposi-ción de una póliza o de cualquier defensa del asegurador con arreglo a la misma:
*644 “(1) Acusar recibo de un aviso de pérdida o reclamación bajo la póliza.
"(2) Suministrar modelos para informar una pérdida o reclamación, para dar información sobre el particular o para presentar prueba de pérdidas, o recibir o acusar recibo de cualesquiera de dichos modelos o pruebas, una vez llenos total o parcialmente los blancos.
“(3) Investigar cualquier pérdida o reclamación con arreglo a una póliza, o en-trar en negociaciones con miras a una posible liquidación de tal pérdida o reclamación.” 26 L.P.R.A. see. 1137.

 Distinto hubiese sido el caso si en el ajuste final Integrand hubiera esgri-mido como defensa las condiciones de la póliza y luego, en pos de la liquidación de la reclamación, hubiese negociado dejarlas de lado. El artículo evitaría que, en caso de no concretarse un acuerdo, se pudiese utilizar las negociaciones como prueba de responsabilidad y de no aplicabilidad de las mencionadas condiciones.

 Es decir, 50% inmediatamente y el restante 50% al completarse sustancial-mente la obra.

 El cálculo se realizó estudiando el período entre el día del siniestro, es decir, el 18 de octubre de 2004 hasta finales del mes de abril.